| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

The United States of America, §
§
    Plaintiff, §
§
versus §     Criminal H-10-500
§
Robert Daniel Hearn, §
§
    Defendant. §

## Opinion on Dismissal

1. *Introduction.*

A State Department employee working in Iraq supposedly arranged for government-owned trailers, over which he had no authority, to be moved and later leased to another. The government indicted him for conversion by a governmental official. 18 U.S.C. § 654. The charge of conversion will be dismissed because this court is not a permissible venue.

2. *Indictment's Story.*

From April of 2005 to September of 2006, Robert D. Hearn worked in Iraq for the State Department in its Iraq Reconstruction Management Office. His job was to assist the director of the port at Umm Qasr, Basra, Iraq. He had no authority to contract for the United States much less to convey its property. The government says that while in Iraq, Hearn also managed Bawabet Al Amer Company, an Iraqi business at the port.

During the construction of a power plant in Khor Az Zubair, Iraq – about fifty miles from the port – trailers owned by the United States had been used as offices and quarters. By the fall of 2005, the plant was nearly complete, and the trailers were no longer needed. In December, without authority Hearn negotiated and signed papers with the Army and contractors to move about sixty of them from Khor Az Zubair to the port at Umm Qasr. When the Army realized that Reconstruction did not have authority over the trailers, it balked at moving them. Hearn then had an Iraqi employee of Bawabet sign for the trailers on behalf of the Iraqi Ministry of Transportation.

Through the first nine months of 2006, Hearn arranged about twenty-eight of these trailers to be delivered to an area of the port operated by Bawabet. Hearn controlled both Bawabet and its area in the port. A British company hired them from Bawabet, with Hearn negotiating for it, in September of 2006. The British company paid its rent by wire to Sinbad Shipping Services USA at its bank account in Conroe, Texas. Hearn also controlled Sinbad.

3. *Positions.*

Among other counts, the government has indicted Hearn for conversion under 18 U.S.C. § 654. It prohibits an employee of the United states from using his position to convert property "to his own use." *See* Appendix.

Hearn has asked this court to dismiss the count of conversion. He says that venue in the Southern District of Texas is not authorized because the offense was committed entirely within Iraq and because he was arrested in and first appeared in Waco in the Western District of Texas.

The Constitution requires defendants to be tried in the state where the crime was committed, but contemplating unorganized territories and piracy, it also permits the federal judiciary to try cases not committed within a state. Venue for offenses not committed in a state lies where the "offender . . . is arrested or first brought." 18 U.S.C. §3238, implementing U.S. Const., art. III, §2, cl. 3.

The government says venue is proper in the Southern District because at least one element of the crime occurred here. It says that because it must prove Hearn converted the property to *his own use*, his wiring of the funds to Conroe *continued* the act of conversion to the Houston area where Conroe is found – that it did not take place entirely within Iraq. *See* 18 U.S.C. § 3237(a).

4. *To His Own Use.*

The government says that because the statute includes the phrase "to his own use," it must first prove that (a) Hearn converted the property and (b) separately he did it to his own use. It is wrong.

Conversion descends from the early common-law action of trover. At common law, trover was always essential to support conversion, and trover lay not when a defendant took the goods but instead when a he "converted them to his own use." This phrase in the pleading

evolved into plain conversion and it became the tort's name instead of trover. *Prosser and Keeton on Torts* 89 (5th ed. 1984); Benjamen J. Shipman, *Handbook of Common-Law Pleadings*, 107 (3d ed. 1923). *See also Restatement of Torts*, §222A.

Conversion is an adverse control over goods – control inconsistent with the owner's rights. Properly, it is limited to personal property. Using a good as if it were one's own is a conversion to one's own use. That use may be a destruction, loss, consumption, sale, misallocation, donation, hypothecation, or any other application of an interest in the good that is in derogation of the owner's interest. "To his own use" means only that the defendant deprived the owner of his rights over the property. "If one legally in possession of the property of another, misuse that property, it is conversion of it." *Ripley v. Dolbier*, 18 M3. 382, 384 (1841) (citing *Mulgrave v. Ogden*, (1590) 78 Eng. Rep. 475; Cro. Eliz. 219).

No showing of a tangible or direct personal advantage or relation to the good in the converter is required. The phrase "his own use" only serves to distinguish from the owner's use. Adding the phrase "to his own use" to the word conversion is nothing more than sloppy surplusage – perhaps a gratuitous a carry-over from the common-law pleading of trover. *Hubbard v. United States*, 79 F.2d 850, 854 (9th Cir. 1935). *Accord United States v. Santiago*, 528 F.2d 1130, 1135 (2d Cir. 1976).

Interestingly, in its proposed jury instructions, the government concedes that it need not prove that Hearn had a personal benefit from the conversion of the trailers. It offered: "The government does not have to prove that the defendant actually kept the money or property for personal use, or that he intended to do so." Government's Proposed Special Jury Instructions, at 4-5, *United States v. Hearn*, 4:10-cr-500 (No. 38). If a conviction under the statute does not require proof that Hearn had some particular profit or intention from his taking the trailers, "to his own use" cannot be a distinct element of the crime.

5.   *Continuation.*

The government further says that by having the British company send its payments for the rent to a Conroe-based bank account, Hearn *continued* the conversion in the Southern District of Texas. As usual, the government takes a rather expansive view of its authority. It is wrong.

Conversion is complete the moment the defendant takes, detains, or disposes of the goods – depriving the owner of his authority. *Prosser and Keeton on Torts* 106 (5th ed. 1984).

"After the wreck of the boat . . . he had no authority to sell, much less to lend or rent any portion of the tackle or boat. His agency then expired. If he did lend or sell any part of the boat without permission . . . it was a conversion of the property . . . ." *Rice v. Clark*, 8 Vt. 109, 110 (1836). It does not continue everywhere that the defendant may have transported the good or sent the money that he may have received by hiring it to others.

Under the government's theory, if a man took someone else's computer in a restaurant in Virginia, pawned it in North Carolina, and deposited the money from the pawn into his account in a Texas bank, part the conversion would have also occurred in Texas. This logic is empty. The attack on the owner's title occurred and was complete the moment the man knowingly took the computer of another in Virginia. Likewise, if Hearn converted the trailers, he did it solely in Iraq. No part of the crime could have occurred in the Southern District of Texas regardless of where the payments may have been wired, the trailers used, or anything else after the exercise of "adverse dominion." Benjamen J. Shipman, *Handbook of Common-Law Pleadings*, 107 (3d ed. 1923).

5. *Conclusion.*

Because no "personal" use element exists and because no part of the crime pleaded could have occurred here, the Southern District of Texas is not a permissible venue to try Robert Daniel Hearn for conversion.

Signed on March 21, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge

Appendix

## 18 United States Code § 654

*The first paragraph is the statute's text. The second one has the surplusage struck, and the third one is the text with the struck words omitted.*

Whoever, being an officer or employee of the United States or of any department or agency thereof, embezzles or wrongfully converts to his own use the money or property of another which comes into his possession or under his control in the execution of such office or employment, or under color or claim of authority as such officer or employee, shall be fined under this title or not more than the value of the money and property thus embezzled or converted, whichever is greater, or imprisoned not more than ten years, or both; but if the sum embezzled is $1,000 or less, he shall be fined under this title or imprisoned not more than one year, or both.

Whoever, being an officer or employee of the United States ~~or of any department or agency thereof~~, embezzles or ~~wrongfully~~ converts ~~to his own use~~ the money or property of another which comes into ~~his possession or under~~ his control ~~in the execution of such office or employment,~~ or under color ~~or claim~~ of authority as such officer or employee, shall be fined ~~under this title or not more than the value of the money and property thus embezzled or converted, whichever is greater~~, or imprisoned ~~not more than ten years, or both; but if the sum embezzled is $1,000 or less, he shall be fined under this title or imprisoned not more than one year, or both~~.

Whoever, being an officer or employee of the United States, embezzles or converts the money or property of another which comes into his control in the under color of authority as such officer or employee, shall be fined or imprisoned.